UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| American Civil Liberties Union of Massachusetts, Inc., | ) ) ) | Civil Action No. 19-10690-LTS |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| U.S. Immigration and Customs Enforcement, | ) ) ) | |
| Defendant. | ) | |

## **DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant, U.S. Immigration and Customs Enforcement ("ICE"), by its attorney, Andrew E. Lelling, United States Attorney for the District of Massachusetts, submits the following statement of undisputed material facts in support of its Motion for Summary Judgment. This is a FOIA action and ICE provides the undisputed facts to set forth ICE's search for documents and exemptions maintained in this suit through the Declaration of Toni Fuentes, Deputy Officer of ICE's FOIA Office ("Fuentes Dec., ¶ __") and the exhibits attached thereto.

**ACLU's FOIA Request**

1.      On February 22, 2019, ACLU submitted a FOIA request to ICE. The FOIA request was processed by the ICE FOIA Office. Fuentes Decl. ¶ 6 and Exhibit B.

2.      The FOIA request was processed by the ICE FOIA Office and contained a request for records relating to an address given by ICE Senior Official Performing the Duties of the Deputy Director Matthew T. Albence given to participants in the National Sheriffs' Association conference on or around February 10, 2019. The FOIA request was for five categories of information, including:

a.      Records containing some or all of the Address, including without limitation any prepared remarks, notes, and outlines, and any drafts thereof.

b.      Any slides, PowerPoint presentations, and handouts presented or provided in connection with the Address, and any drafts thereof.

c.      Any audio and/or visual recordings of the Address.

d.      Correspondence, including e-mail correspondence, between or among ICE personnel (including Mr. Albence and his staff) and representatives of the National Sheriff's Association concerning the planning, delivery, and/or content of the Address.

e.      Correspondence, including e-mail correspondence, between or among ICE personnel (including Mr. Albence and his staff) and representatives of the Commonwealth of Massachusetts (including any Massachusetts Sheriff and/or employees of any Massachusetts Sheriff's Department) concerning the planning of the Address.

*Id.*

3.      By letter dated April 16, 2019, the ICE FOIA Office sent a final response letter to ACLU regarding the request and produced 141 responsive documents.  The letter also advised that ICE conducted a search of the "ICE Office of the Deputy Director, the ICE Office of Public Affairs, and the ICE Office of Enforcement and Removal Operations for records responsive to your request." and "produced 141 pages that are responsive to your request."  Fuentes Dec. ¶ 8.

4.      On August 9, 2019, ACLU amended its complaint in this action to expand its original FOIA request to include records for Ronald Vitiello.  The Amended Complaint alleged that Mr. Vitiello was then "the Acting Director of ICE, and Matthew Albence was ICE's Executive Associate Director for Enforcement and Removal Operations and Senior Official Performing the Duties of Deputy Director.  Mr. Vitiello has since resigned, and Mr. Albence has since assumed the duties of Acting Director."  Amended Complaint, ¶ 8 (ECF No. 16).   Fuentes Dec. ¶ 33.

**ICE's Standard Procedure for Initiating Searches in Response to FOIA Requests**

5.      When the ICE FOIA Office receives a FOIA request, the intake staff evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3.  Generally, a FOIA request is considered proper and in compliance with DHS regulations if it reasonably describes the records sought and the records are under the purview of ICE.  Fuentes Dec. ¶ 12.

6.      If a FOIA request does not reasonably describe the records sought, the ICE FOIA Office will seek clarification from the requestor.  If the requested information is under the purview of a DHS component other than ICE, the ICE FOIA Office will refer the request to the appropriate DHS component for processing and direct response to the requester.  If the FOIA request seeks records under the purview of a government agency other than DHS, ICE FOIA informs the requestor to contact the other government agency directly and ICE FOIA administratively closes the FOIA request. Fuentes Dec. ¶ 13.

7.      Proper FOIA requests are entered into a database known as FOIAXpress and assigned a case tracking number.  Based upon the requestor's description of the records being sought and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.  Fuentes Dec. ¶ 14.

8.      ICE records are maintained by leadership offices and/or within ICE directorates, including but not limited to, the Office of the Deputy Director, the Office of Public Affairs (OPA), and the Office of Enforcement and Removal Operations (ERO).  Program offices within the leadership office and the ICE directorates are staffed with a designated point of contact (POC).  The POC is the primary person responsible for communications between that program office and the ICE FOIA Office.  Each POC is a person with detailed knowledge about the

3

operations of his/her particular program office.  Fuentes Dec. ¶ 15

9.      Upon receipt of a proper FOIA request, the ICE FOIA Office will identify which program offices, based upon their experience and knowledge of ICE's program offices, within ICE are reasonably likely to possess records responsive to that request, if any, and initiates searches within those program offices.  Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices a copy of the FOIA request and instructs them to conduct a search for responsive records.  The POC reviews the request, along with any case-specific instructions that may have been provided and, based on their experience and knowledge of the program office practices and activities, forward the request to the individual and/or component reasonably believed likely to have responsive documents.  The individual and/or components are directed to searches of their file systems, including both paper and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents.  Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office.  The ICE FOIA Office then reviews the collected records for responsiveness and application of appropriate FOIA Exemptions. Fuentes Dec. ¶ 16.

10.      ICE employees maintain records in several ways.  ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records.  ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, and/or USB storage devices.  The determination of whether or not these electronic

locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.  Fuentes Dec. ¶ 17.

11.     ICE employees have access to email, and each employee stores his/her files in the way that works best for that particular employee – some archive the e-mail by topic or program and others may create PST files and store them on their hard drive or shared drive.  Fuentes Dec. ¶ 18.

12.     Records received from the POCs are sent to the ICE FOIA Office, which is responsible for determining whether or not the documents are responsive to the FOIA request, and if so, determining whether to redact information pursuant to the FOIA or Privacy Act, while simultaneously ensuring that all reasonably segregated non-exempt information is released. Fuentes Dec. ¶ 19.

**The Program Offices Tasked With Searching Plaintiff's FOIA Request**

13.     The ICE FOIA Office determined that due to the subject matter of Plaintiff's FOIA request, the Office of the Deputy Director, OPA, and ERO were likely to have responsive records.  The ICE FOIA Office instructed each of these offices to conduct a comprehensive search for records and to provide all records located during that search to the ICE FOIA Office for review and processing.  Fuentes Dec. ¶ 22.

<u>Office of Deputy Director</u>

14.     The Office of Deputy Director supports the Deputy Director by managing ICE's day-to-day operations and administrative functions, including oversight of ICE's $6 billion budget.  Fuentes Dec. ¶ 23.

15.     On March 15, 2019, the ICE FOIA Office tasked the Office of Deputy Director

with responding to Plaintiff's FOIA request and instructed the office to search for the six specified categories of information contained in Plaintiff's FOIA request. Fuentes Dec. ¶ 24.

16.     In searching for potentially responsive records, the Office of Deputy Director utilized the search function to identify any potentially responsive e-mail correspondence and records contained in shared folders. These search locations were identified as the most likely to return responsive documents, if any. Fuentes Dec. ¶ 25.

17.     On March 26, 2019, the Office of the Deputy Director completed its search and provided approximately six pages of potentially responsive documents to the ICE FOIA office for processing. Fuentes Dec. ¶ 25.

Office of Public Affairs (OPA)

18.     The OPA was also tasked with responding to Plaintiff's FOIA request. OPA builds public understanding and support for the agency's mission by engaging with the news media, federal, state and local agencies and non-governmental organizations and working closely with internal stakeholders to inform and engage ICE employees. OPA's Media Relations Branch includes 30 public affairs officers located in Washington, D.C. and around the country who are responsible for responding to local, national and international media inquiries, planning press events, crafting agency messaging and developing media campaigns. Fuentes Dec. ¶ 26.

19.     When OPA receives a FOIA tasking from the ICE FOIA Office, the request is handled by a senior Management and Program Analyst. The senior Management and Program Analyst will task certain employees with conducting searches for potentially responsive records. Fuentes Dec. ¶ 27.

20.     In this case, the OPA individual tasked was a writer who was responsible for preparing the remarks in advance of the National Sheriffs' Association for both the Deputy

Director and Director.  The writer used appropriate search terms while conducting his search, including "immigration update by acting Deputy," "records/documents National Sheriffs' Association," and "Director ICE Matthew Albence."  The OPA Deputy Assistant Director, directly responsible for reviewing and overseeing draft remarks prepared for the Deputy Director and Director, was also tasked with a search for potentially responsive records.  The OPA Deputy Assistant Director used appropriate search terms identical to those used by the OPA writer.  Fuentes Dec. ¶ 27.

21.     On April 11, 2019, OPA completed its search and approximately 135 pages of potentially responsive records were provided to the ICE FOIA Office for processing.  Fuentes Dec. ¶ 28.

22.     OPA confirmed that it provided draft remarks to ICE Front Office and was not aware of other versions, including any "final" talking points for this meeting.  It further confirmed that the draft talking points could be used for both Mr. Albence and Mr. Vitiello.  Fuentes Dec. ¶¶ 29, 35(a).

23.     The ICE FOIA Office confirmed with OPA that ICE did not record the event in any manner, either visually or audibly.  ICE is also unaware of any recordings made by the hosting organization.  Fuentes Dec. ¶ 35(b).

24.     The ICE FOIA Office confirmed with OPA that no materials, including slides, PowerPoint presentations, or handouts were provided or presented at or for the National Sheriffs' Association meeting.  Fuentes Dec. ¶ 35(c).

Office of Enforcement and Removal Operations (ERO)

25.     The ERO comprises seven headquarters divisions and 24 field office and more than 7,600 employees.  It is the office that oversees programs and conducts operations to identify

and apprehend removable aliens, to detain these individuals when necessary, and to remove illegal aliens from the United States. It manages all logistical aspects of the removal process. Fuentes Dec. ¶ 30.

26.      When ICE ERO is tasked with a FOIA request from the FOIA Office, the request is submitted to ERO's Information Disclosure Unit ("IDU"). The POCs in the IDU review the request, and, based on the substance of the request and upon the subject matter expertise and knowledge of the program office's activities, IDU forwards the request to specific individuals and component offices. It directs specific employees or offices to search their file systems that reasonably would be likely to have responsive records. The employees exercise discretion in choosing search terms. Once searches are completed, the individuals and component offices provide any potentially responsive records to the IDU POC, who, in turn, provides the records to the ICE FOIA Office. The ICE FOIA Office reviews the records for responsiveness. Fuentes Dec. ¶ 31.

27.      In this case, the Mission Support Specialist from ERO IDU was tasked with a search for potentially responsive records and utilized the search function to identify any potentially responsive e-mail correspondence and records contained in the shared folders. These search locations were identified as most likely to return responsive documents. No records were located. Fuentes Dec. ¶ 32.

28.      In preparation for a meeting or speaking event, ICE's standard practice is to draft remarks or talking points based on the subject matter of the engagement and not the individual scheduled to speak. Fuentes Dec. ¶ 34. Given the ever-changing schedules and demands of ICE's senior leadership, specific talking points are generally not separately drafted for Mr. Albence and Mr. Vitiello. Instead, talking points are drafted that can be utilized by Mr. Albence,

8

Mr. Vitiello, or any other speaker that may take need to appear if the scheduled ICE speaker is unavailable.  *Id.*

29.     A description of each redaction contained in the documents, the corresponding FOIA exemption being applied and the basis therefor is set forth in the *Vaughn* index, attached as Exhibit A to the Fuentes Declaration.  Fuentes Dec. ¶ 5, 36.

30.     ICE redacted documents pursuant to Exemption (b)(5) to protect the integrity of the deliberative or decision-making processes with the agency and by exempting from mandatory disclosure opinions, conclusions and recommendations.  Fuentes Dec. ¶ 39.  These documents were draft documents, which, by their very nature are pre-decisional, preliminary versions of what may later become a final document in whole or in part, or remain drafts that never mature into final form.  *Id.*

31.     Release of draft responses to inquiries and agency policies could potentially cause confusion to the public regarding updates to ICE's mission and activities.  Release of this information could also cause a chilling effect on open and frank internal agency discussions.  *Id.*

32.     ICE applied Exemption (b)(6), in conjunction with Exemption 7(C) to protect from disclosure the names, e-mail addresses, and phone numbers of federal law enforcement officers and non-public facing ICE employees.  Fuentes Dec. ¶ 43.

33.     By virtue of the positions held by the federal law enforcement and ICE employees in the responsive records, they are permitted access to official law enforcement investigation information.  ICE gave consideration to the privacy interests of these individuals in not becoming targets of harassment and in remaining free of interference in the performance of their duties by persons who are currently of interest to law enforcement or oppose the ICE mission. Other privacy interests include each individuals' interest in remaining free of harassment and

annoyance in conducting their official duties in the future, in remaining free from harassment and annoyance in their private lives, and not being targeted by individuals in the future who may begrudge them.  Fuentes Dec. ¶ 44.

34.    ICE also considered the privacy interests of third parties named in the responsive documents, and did not release their information.  ICE considered their privacy interests of their right to remain free from embarrassment, humiliation, annoyance, harassment, intimidation, un-official questioning, retaliation or physical harm for having been identified in law enforcement records.  Fuentes Dec. ¶ 45.

35.    ICE balanced the interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in obtaining information that would shed light on the operations and activities of ICE in performance of its statutory duties.  Fuentes Dec. ¶ 48.  No such public interests has been articulated by Plaintiff.  *Id.*

36.    In each instance where redactions pursuant to Exemptions 6 and 7(C) were applied, the redaction was limited to the name of the individual or other personally identifiable information; all of the information surround the redactions was released.  *Id.*

37.    ICE applied Exemption 7(E) to the document entitled "Update-Warrant Service Program."  Exhibit A to Fuentes Dec., Vaughn Index, p. 5.

38.    In reviewing the records, ICE conducted a line-by-line review to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.  Fuentes Dec. ¶ 52.

39.    With respect to the released documents, all information not exempted from FOIA Exemptions specified above was correctly segregated and non-exempt portions were released. No information was withheld on the grounds that it was non-segregable.  Fuentes Dec. ¶ 53.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:    /s/ *Susan M. Poswistilo*
        SUSAN M. POSWISTILO (BBO #565581)
        Assistant U.S. Attorney
        John J. Moakley Federal Courthouse
        One Courthouse Way, Ste. 9200
        Boston, MA  02210
        (617) 748-3103
        susan.poswistilo@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: September 11, 2019        /s/ *Susan M. Poswistilo*
                                                Susan M. Poswistilo
                                                Assistant U.S. Attorney