UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| American Civil Liberties Union of Massachusetts, Inc., | Civil Action No. 19-10690-LTS |
| Plaintiff, | |
| vs. | |
| U.S. Immigration and Customs Enforcement, | |
| Defendant. | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendant, the Immigration and Customs Enforcement (ICE), moves for summary judgment as to ICE's response to Plaintiff in this Freedom of Information Act ("FOIA") case.  Plaintiff, the American Civil Liberties Union Foundation of Massachusetts ("ACLU"), brought this action under the FOIA, 5 U.S.C. §552, seeking records relating to an address given by ICE to the National Sheriffs' Association conference in February 2019.  In response, ICE released 141 documents to Plaintiff, and withheld information pursuant to FOIA Exemptions 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C) and (b)(7)(E).  ICE now moves for summary judgment.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

ICE relies upon its Statement of Undisputed Material Facts ("SUMF")  being filed simultaneously herewith, including the Declaration of Toni Fuentes, Deputy Officer of ICE's FOIA Office and exhibits attached thereto.

**ARGUMENT**

**ICE CONDUCTED AN ADEQUATE SEARCH AND
RESPONDED TO PLAINTIFF'S FOIA REQUEST IN
ACCORDANCE WITH APPLICABLE LAW**

**A.   Standard of Review**

FOIA cases are generally decided on summary judgment.  Specifically, federal courts

grant summary judgment to the government in a FOIA case "if the agency proves that it has fully

discharged its obligations under the FOIA, after the underlying facts and the inferences to be

drawn from them are construed in the light most favorable to the FOIA requester."  ACLU v.

FBI, Civil Action No. 14-11759-ADB, 2016 WL 4411492 at *3 (D. Mass. Aug. 17, 2016) (citing

Fischer v. U.S. Dep't of Justice, 596 F. Supp. 2d 34, 42 (D.D.C. 2009) (quoting Greenberg v.

U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)).  In a FOIA suit, an agency is

entitled to summary judgment once it demonstrates that no material facts are in dispute and, if

applicable, that each document that falls within the class requested either has been produced, is

unidentifiable, or is exempt from disclosure.  Students Against Genocide v. U.S. Dep't of State,

257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. DOJ, 627 F.2d 365, 368 (D.C. Cir. 1980).  See

also Moffat v. U.S. Dep't of Justice, 716 F.3d 244, 256 (1st Cir. 2013) (affirming district court's

grant of summary judgment).

An agency satisfies the summary judgment requirements in a FOIA case by providing the

Court and the plaintiff with a declaration and/or other evidence, which show that the documents

in question were either produced *or* are exempt from disclosure.  Hayden v. NSA, 608 F.2d

1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v.

U.S. Dep't of Army, 611 F.2d 738, 742 (9th Cir. 1979); Trans Union LLC v. FTC, 141 F. Supp.

2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be awarded solely on the basis

of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)).  The requester may challenge such a showing by "set[ting] forth specific facts showing that there is a genuine issue for trial" that would permit a reasonable jury to find in his favor.  Laningham v. U.S. Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  Agency declarations "are afforded a presumption of good faith," and an adequate affidavit "can be rebutted only 'with evidence that the agency's search was not made in good faith.'"  Defenders of Wildlife v. U.S. Dep't of Interior, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (internal citations and quotations omitted).

Here, the government is entitled to summary judgment because ICE's response to Plaintiff was proper, as demonstrated by the Declaration of Toni Fuentes, and exhibits, including Exhibit A, the *Vaughn* index, which show that ICE conducted and adequate search for documents, and all responsive documents were produced, subject to FOIA Exemptions.

**B.  ICE Conducted An Adequate, Reasonable Search.**

To demonstrate the adequacy of a search, an agency must "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Stalcup v. CIA, 768 F.3d 65, 74 (1st Cir. 2014).  An adequate search does not mean that every conceivable responsive document will be discovered.  See id. ("There is no requirement that an agency search every record system."); Allen v. United States Secret Serv., 335 F. Supp. 2d 95, 99 (D.D.C. 2004) ("While the agency's search must be reasonably calculated

to produce the requested information, FOIA does not impose a requirement that every record be found."); Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.").

In evaluating the adequacy of a search, courts accord agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" Safecard Serv., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991). "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." Id. at 1201. The statute does not require "meticulous documentation [of] the details of an epic search." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). Instead, declarations that "explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." Id.

As set forth in ICE's Statement of Undisputed Material Facts, and outlined in the Fuentes Declaration, ICE conducted an adequate, reasonable search for responsive records here. The office within ICE that processed and responded to Plaintiff's FOIA request is known as the ICE FOIA Office. SUMF ¶¶ 1, 2. When the ICE FOIA Office receives a request, it evaluates the propriety of the request and determines if it reasonably describes the records sought. SUMF ¶¶ 5, 5. If it does, the request is entered into a database and assigned a tracking number. SUMF ¶ 7. Based upon the requestor's description of the records being sought and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office or offices likely to possess responsive records, and tasks the appropriate office to conduct the necessary searches. Id.

Plaintiff submitted a FOIA request to ICE on February 22, 2019, seeking five types of records related to a February 10, 2019, address delivered by ICE Senior Official Performing the Duties of the Deputy Director Matthew T. Albence at the National Sheriffs' Association conference in Washington, D.C.[1]  SUMF ¶¶ 1, 2 and Exhibit B to Fuentes Dec.  The FOIA Office determined that given the subject matter of ACLU's request, the ICE Office of the Deputy Director, ICE Office of Public Affairs ("OPA") and ICE's Office of Enforcement and Removal Operations ("ERO") were the three offices likely to have responsive requests.  SUMF ¶ 13.  The ICE FOIA office instructed these three offices to conduct a comprehensive search for the requested records and to provide all records located during that search to the ICE Office for review and processing.  *Id.*

As set forth in the facts, all three offices did indeed conduct a comprehensive search for records. *See,* SUMF ¶¶ 15-27.  The Office of the Deputy Director, which manages ICE's day-to-day operations and administrative functions, was instructed to search for each of the categories of documents.  SUMF ¶ 14, 15.  The Office identified locations as the most likely to return responsive documents, and searched for potentially responsive e-mail correspondence and records contained in shared folders. SUMF ¶ 16.  It identified six potentially responsive documents.  SUMF ¶ 17.

At OPA, both the OPA Deputy Assistant Director, who was responsible for reviewing and overseeing draft remarks, and the individual writer responsible for preparing the remarks in

---

[1] ACLU's original FOIA request specifically identified records relating to Matthew T. Albence, then Executive Associate Director for ERO and Senior Official Performing the Duties of Deputy Director. Complaint, Ex, A.  On August 9, 2019, ACLU amended its Complaint (ECF No. 16) and expended its original FOIA request to include records for Ronald Vitiello, then Acting ICE Director.

advance of the conference for both the Deputy Director and Director were tasked to search for responsive documents.  A number of search terms were utilized to locate the documents, and OPA identified 135 potentially responsive documents to the ICE FOIA Office.  SUMF ¶ 21.

Finally, the Information Disclosure Unit (IDU) of ERO was tasked with the FOIA request.  The IDU reviewed the request, and based on the subject and subject matter expertise of the program office's activities, forwarded the request to specific individuals and component offices to conduct the search.  SUMF ¶ 26.  The Mission Support Specialist in ERO IDU searched for potentially responsive e-mail correspondence and records contained in the shared folders.  No records were identified.  SUMF ¶ 27.

In conclusion, ICE's search for documents responsive to Plaintiff's FOIA request was adequate and reasonable.  The ICE FOIA Office received the request, identified the program offices reasonably likely to possess records responsive to that request, if any, and initiated searches within those program offices.  Each of the three offices identified by ICE FOIA searched, responded, and produced any documents that existed.  Further, even after Plaintiff filed its amended complaint, the ICE FOIA Office confirmed with OPA that, given the ever-changing schedules and demands of ICE's senior leadership, specific talking points are generally not separately drafted for Mr. Albence or Mr. Vitiello and that the draft remarks requested by Plaintiff could be used by either Mr. Albence or Mr. Vitiello.  SUMF ¶¶ 22, 28. It also confirmed that OPA was unaware of any "final" talking points for this meeting.  SUMF ¶ 22. Likewise, it confirmed that there was no recording of the event and that no materials were provided or presented.  SUMF ¶¶ 23, 24.

Accordingly, because ICE employed measures that can be expected to produce the information requested, and in fact, reconfirmed those measures, it conducted an adequate and reasonable search and summary judgment is appropriate.

### C. ICE Properly Withheld Information Pursuant to the FOIA.

In accordance with the statutory requirements of the FOIA, the Fuentes Declaration contains a complete description of, and justification for, the information exempt pursuant to FOIA Exemptions (b)5, (b)6, (b)(7)(C), and (b)(7)(E) of the FOIA, 5 U.S.C. §§ 552(b)(1), 552(b)(6), (b)(7)(C), (b)(7)(E). Fuentes Decl. ¶¶ 38-50. ICE has adequately justified its assertion of these exemptions in its *Vaughn* index (Exhibit B to Fuentes Dec.) and has demonstrated that it did not improperly withhold information from the ACLU. Accordingly, ICE is entitled to summary judgment.

### a. ICE Properly Withheld Information Pursuant to Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60 (1st Cir. 2002). 5 U.S.C. § 552(b)(5). The scope of the exemption is intended to incorporate and mimic the rules of civil discovery, including doctrines such as "attorney work product," "attorney client privilege," and the "deliberative process." *Dep't of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8 (2001); *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149-150 (1975); *see also State of Maine*, 298 F.3d at 66.

The deliberative process doctrine protects documents that that "reflec[t] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* at 150 (internal quotations

omitted), *quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324 (D.C. 1966).  The deliberative process privilege exists "to prevent injury to the quality of agency decisions.  *Sears*, 421 U.S. at 151.  This also helps to avoid confusion of the public due to "...dissemination of documents suggesting reasons and rationales for a course of action which were not...the ultimate reasons for that action."  *American Federation of Government Employees, AFL-CIO, Local 1164 v. U.S. Dept. Of Health & Human Services*, 64 F.Supp.2d 104, 107 (D.Mass.1999), *quoting Providence Journal Co. v. U.S. Dept. of Army*, 981 F.2d 552, 557 (1st Cir. 1992).

To properly invoke Exemption 5, an agency must first show that a requested document was ". . . prepared prior to a final decision 'in order to assist an agency decision maker in arriving at his decision.'" *See Town of Norfolk v. U.S. Army Corps of Engineers*, 968 F.2d 1438, 1458 (1st Cir. 1992) (internal quotations omitted), *quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).  It must additionally be shown that the document represents "...a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters."  *Id.*  "To satisfy the 'deliberative' element of the exception, a document must reflect 'the give-and-take of the consultative process.'" *Stalcup v. CIA*, 768 F.3d 65, 70 (1st Cir. 2014) (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). "A predecisional document will qualify as 'deliberative' provided it (i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Providence Journal Co.*, 981 F.2d at 559 (internal quotations and citations

omitted).

In this case, ICE did not produce portions of e-mails, draft talking points, a draft agenda, a draft broadcast message and a draft memorandum of agreement.  However, by producing what it did, ICE made efforts to segregate the exempt from non-exempt communications.  SUMF ¶ 38. The deliberative process exemptions asserted by ICE primarily relate to draft documents, which by their very nature, are pre-decisional documents that comprise the recommendations, opinions of individuals or advisory opinions of agency personnel.  SUMF ¶ 30.  The draft documents may become a final document, or a version of a final document or, they remain draft that never mature into final form.  *Id.*  In fact, the process by which a draft evolves into a final document is itself a deliberative process.  *Id.*

Draft Emails:  ICE did not turn over e-mails that were internal discussions between and among ICE employees regarding draft remarks and preparation for the National Sheriffs' Association Immigration and Border Security meeting, although it made efforts to segregate the non-exempt from exempt information in the subject e-mails.[2]  As stated in the *Vaughn* index, the portions of the e-mails that were exempt contain opinions, conclusions and recommendations regarding the draft remarks and preparation for the National Sheriffs' Association Immigration and Border Security meeting.  The release of these internal discussions would discourage the

---

[2] The emails are on pgs. 1, 11, 13, 14, 15, 19, 26, 29, 32, 45-51, 86-88, 96-98, and 111-141 of the Vuaghn Index (Exhibit A to Fuentes Declaration).

expression of candid opinions and inhibit the free and frank exchange of information and ideas, resulting in a chilling effect on inter-agency communications.

Draft Talking Points: Likewise, the draft talking points and preparation for the National Sheriffs' Association Immigration and Border Security meeting are subject to Exemption (b)(5). The drafts are exactly that – non-final information and itineraries for ICE's speaking engagements for the meetings.  Indeed, the talking points, which are prepared based on the subject matter of the engagement, not the speaker, never became final, as the speaker could use or not use the talking points as he or she desired.  As with the e-mails, release of the draft agenda and draft talking points would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas, resulting in a chilling effect on inter-agency communications.

Draft Agenda: ICE did not produce a National Sheriffs' Association Draft Agenda, pursuant to Exemption (b)(5).  This document contained non-final information and itineraries for possible speaking engagements by ICE representatives.  Disclosure of a non-final agenda could be confusing to the public if it differs from the final topics or final speakers.  Accordingly, this document was properly withheld under the FOIA.

Draft Broadcast Message:  As described on page 5 of the *Vaughn* index, the document entitled "Update – Warrant Service Officer Program" contained a draft broadcast message to ERO field offices about updates to the Warrant Service Officer Program.  However, the draft message was not formally sent to the ERO field offices for action.  Here, Exemption (b)(5) is appropriate because release of the document in its draft form would discourage the expression of candid interviews and frank exchange of ideas.  Further, disclosure of the draft information could confuse the public by releasing information and/or updates to a program that were never adopted

by the agency.

      <u>Draft Memorandum of Agreement (MOA)</u>:  This is yet another document in its draft form as it contains highlights in the document that show that it requires further action before becoming final.  *See Vaughn* Index, pp. 6-7.   As contemplated by Exemption 5, this document need not be produced to Plaintiff as disclosure of the draft could discourage the expression of candid interviews and frank exchange of ideas between agency personnel resulting in a chilling effect on intra-agency communications.

      **b.**  <u>ICE Properly Withheld Information Pursuant to Exemptions 6 and 7(C)</u>

      Exemption 6 of the FOIA permits agencies to withhold records that are contained within "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In applying this exemption, agencies must determine as a threshold matter whether the records at issue fall into the categories of "personnel and medical files and similar files."  The term "similar files" has been construed broadly to include "any records on an individual who can be identified as applying to that individual."  <u>See</u> <u>Dep't of State v. Wash. Post. Co.</u>, 456 U.S. 595, 601 (1982) (quoting the legislative history of the exemption in order to define the term).  Disclosures in accordance with Exemption 6 are evaluated in light of whether they "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

      Like Exemption 6, Exemption 7(C) also protects privacy interests, but on a broader scope.  Under Exemption 7(C), records are not to be released if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Both exemptions, however, employ the same type of analysis, in that an agency is required to

identify and balance the relevant privacy and public interests at stake.  See Favish, 541 U.S. at

165-6 (describing the differences between the two exemptions).

Here, ICE applied Exemption 6, in conjunction with Exemption 7(C), to protect the

disclosure of names, email addresses and phone numbers of federal law enforcement officers and

non-public facing ICE employees.  SUMF ¶ 32.  With respect to the ICE employees mentioned

as the senders and or recipients of emails in the records, ICE gave consideration to the privacy

interests of these law enforcement or ICE employees in not becoming targets of harassment and

their interest in remaining free of interference of performance of their official duties by persons

who are currently of interest to law enforcement or oppose the ICE mission.  SUMF ¶ 33.

Courts, even in the context of non-law enforcement records, have recognized that these types of

harm constitute a clearly unwarranted invasion of an individual's personal privacy.  See NARFE

v. Horner, 879 F.2d at 878 (determining that the release of names and/or addresses of federal

annuitants to a special interest association would subject them to harassment and constitute a

significant invasion of their privacy).

Here, ICE also considered the privacy interest of third parties named in the responsive

documents and did not release their information.  SUMF ¶ 34.  These individuals have a privacy

interest in remaining free from embarrassment, humiliation, annoyance, harassment,

intimidation, un-official questioning, retaliation or physical harm for having been identified in

these law enforcement records.  SUMF ¶ 34.

After identifying the significant privacy interests at stake, The ICE FOIA Office balanced

them against the public's interest in obtaining information that would shed light on the

operations and activities of ICE.  SUMF ¶ 35.  Plaintiff has failed to articulate any such public

interest, and because only the name and personally identifiable information was redacted, release of the information would not shed light on the operations and activities of ICE.  *Id.*

Accordingly, in recognition of the substantial privacy interest at stake and the complete lack of any countering public interest, the balance properly weighs on the side of nondisclosure. See Beck, 997 F.2d at 1494.  As such, the ICE's withholdings pursuant to Exemptions 6 and 7(C) are appropriate.

### c.  ICE Properly Withheld Information Pursuant to Exemption 7(E)

Exemption 7(E) protects documents from disclosure if such disclosure would "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations . . . if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  *See* Durrani v. DOJ, 607 F. Supp. 2d 77, 91 (D.D.C. 2009) (Exemption 7(E) properly applied to surveillance techniques not known to subject or potential subject of ongoing investigation); James v. U.S. Customs and Border Prot., 549 F. Supp.2d 1, 10 (D.D.C. 2008) (stating that agency properly invoked Exemption7(E) for investigative techniques where agency had demonstrated that release "could enable [others] to employ measures to neutralize these techniques'") (quoting agency's declaration)).

The 7(E) standard "sets a relatively low bar for the agency to justify withholding." Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011). To show that disclosure "could reasonably be expected to risk circumvention of the law," an agency does not have "a highly specific burden of showing how the law will be circumvented," but only must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." Mayer Brown LLP v. IRS, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (quotation marks and alterations

omitted).

ICE applied Exemption 7(E) to the document entitled "Update – Warrant Service Program."  SUMF ¶ 37.   This exemption was appropriate because the document discusses non-final implementations of the warrant service officer program.  *Id.*  If the processes and procedures discussed therein were disclosed, it could assist persons seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ICE or warrant service officer program participants.  *Id.* Clearly, this is a law enforcement activity and the disclosure of it serves no public benefit nor assist the public in understanding how ICE is carrying out its statutory responsibilities.

<u>CONCLUSION</u>

Based upon the foregoing, Defendant's Motion for Summary Judgment should be granted.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:     /s/ *Susan M. Poswistilo*
        SUSAN M. POSWISTILO (BBO #565581)
        Assistant U.S. Attorney
        John J. Moakley Federal Courthouse
        One Courthouse Way, Ste. 9200
        Boston, MA  02210
        (617) 748-3103
        susan.poswistilo@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


Dated: September 11, 2019                    /s/ *Susan M. Poswistio*
                                             Susan M. Poswistilo
                                             Assistant U.S. Attorney