## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC., ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 1:19-cv-10690-LTS |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, ) | |
| Defendant. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
## IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Trump Administration has made immigration enforcement the centerpiece of its domestic policy agenda. That agenda includes, among other things, promoting collaboration between defendant U.S. Immigration and Customs Enforcement ("ICE") and state-level law enforcement agencies. There is consequently a strong public interest in understanding the scope and nature of that collaboration. Plaintiff American Civil Liberties Union of Massachusetts ("ACLUM") has attempted to vindicate that interest in various ways, including by requesting information through the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

Last February, ICE's two most senior officials—Acting Director Ronald Vitiello and Acting Deputy Director Matthew Albence—addressed a conference of the National Sheriffs' Association. ACLUM has been trying to find out what they said. ICE ignored ACLUM's initial FOIA request, prompting this suit. ICE later produced copies of the remarks, but they are wholly redacted (except for the header) due to ICE's erroneous assertion of the deliberative process

privilege. The apparent theory behind this assertion of privilege, if allowed to stand, would pave the way for government agencies to refuse to disclose countless final drafts of speeches or other remarks by public officials.

The record also indicates that ICE failed to conduct an adequate search and probably has more records that should be collected and produced. For example, nobody at ICE ever asked the two speakers whether they have any documents; nobody ever conducted a search of materials maintained by Mr. Vitiello's office or staff; and nobody conducted any search at all in response to the second of the two FOIA requests now at issue.

Accordingly, in this motion, ACLUM asks the Court to address five discrete questions:

1. Whether the last-in-time version of the prepared remarks is post-decisional, and therefore outside the scope of the deliberative process privilege;

2. Whether the deliberative process privilege protects these prepared remarks at all, when they are not related to any policy-making process;

3. Whether ICE failed to produce segregable factual information from the prepared remarks and related emails;

4. Whether ICE failed to conduct adequate searches in response to the relevant FOIA requests; and

5. Whether ICE improperly withheld a document prepared by a third party on deliberative process grounds.

Because there are no disputes of material fact, and because ACLUM is entitled to judgment as a matter of law on these issues, ACLUM respectfully requests (a) that this motion be granted, (b) that ICE be required to produce the disputed documents without redaction, and (c) that ICE be required to conduct a reasonably adequate search for additional materials as required by law.

## FACTS

**I.    ICE's top officials address the National Sheriff's Association conference.**

The National Sheriffs' Association held its 2019 Winter Legislative & Technology Conference (the "Conference") in Washington, D.C., from February 9-12, 2019. *See* Plaintiff's Statement of Undisputed Materials Facts ("PSFOF") ¶ 1. At the time of the Conference, Ronald Vitiello was ICE's Acting Director, and Matthew Albence was ICE's Executive Associate Director for Enforcement and Removal Operations and Senior Official Performing the Duties of Deputy Director. *See id.* ¶ 2. Both Mr. Albence and Mr. Vitiello spoke at the Conference, respectively on Sunday, February 10 (the "Albence address"), and Monday, February 11 (the "Vitiello address"). *See id.* ¶¶ 2, 3.

A writer in ICE's Office of Public Affairs (the "OPA writer") was responsible for formulating all remarks by ICE personnel at the Conference. *See id.* ¶ 4. According to ICE, "[i]n preparation for a meeting or speaking event, it is ICE's standard practice to draft remarks or talking points on the subject matter of the engagement and not the individual scheduled to speak." *See id.* "[T]alking points are drafted that can be utilized by Mr. Albence, Mr. Vitiello, or any other speaker that may . . . need to appear if the scheduled ICE speaker is unavailable." *See id.*

Accordingly, the OPA writer prepared the remarks for the Conference "such that they could be used by either Mr. Albence or Mr. Vitiello." *See id.* The OPA writer prepared versions of those remarks (labeled "talking points") on February 4, 5, and 6, 2019. *See id.* ICE has never contended that the preparation of these remarks was part of any process to formulate agency policy. *See id.* ¶ 19.

## II.     ACLUM requests information concerning Mr. Albence's remarks.

The fact that Mr. Albence made remarks was publicly disclosed by the National Sheriff's Association and by the Bristol County Sheriff's Office in Massachusetts. *See id.* ¶ 5. Consequently, on February 22, 2019, ACLUM submitted a FOIA request to ICE (the "February Request"). *See id.* ¶ 6. The February Request sought information concerning the Albence address, specifically:

a. Records containing some or all of the Albence address, including without limitation any prepared remarks, notes, and outlines, and any drafts thereof.

b. Any slides, PowerPoint presentations, and handouts presented or provided in connection with the Albence address, and any drafts thereof.

c. Any audio and/or visual recordings of the Albence address.

d. Correspondence, including email correspondence, between or among ICE personnel (including Mr. Albence and his staff) and representatives of the National Sheriff's Association concerning the planning, delivery, and/or content of the Albence address.

e. Correspondence, including email correspondence, between or among ICE personnel (including Mr. Albence and his staff) and any employees or officers of the Commonwealth of Massachusetts (including any Massachusetts Sheriff and/or the employees of any Massachusetts Sheriff's Department) concerning the planning, delivery, and/or content of the Albence address.

On March 15, 2019, ICE sent an email to ACLUM invoking a 10-day extension to respond to the February Request. *See id.* ¶ 7. By April 10, 2019, ICE had not provided any other response to the February Request, nor had it produced any of the requested records. *See id.* ACLUM filed this action on that day. *See* Complaint (Docket No. 1).

Six days later, ICE produced certain redacted records in response to the February Request. *See id.* ¶ 9. The production included multiple copies of the remarks prepared by the OPA writer on February 4, 5, and 6, but (except for the header) the substance of those remarks is completely redacted due to ICE's assertion of the deliberative process privilege. *See* Fuentes

Decl. Ex. E at 39-44, 74-85, 90-95, 99-110; *see also* Fuentes Decl. Ex. A (*Vaughn* entries for relevant pages). The production also included emails containing language to be included in the remarks, but that language is also completely redacted pursuant to the same asserted privilege. *See, e.g.*, Fuentes Decl. Ex. E. at 15; *see also* Fuentes Decl. Ex. A (*Vaughn* entries for relevant pages). Nothing in the production disclosed the substance of the Albence address. See PSOF ¶ 16.

### III.     ACLUM requests information concerning Mr. Vitiello's remarks.

ICE's production in April disclosed, for the first time, that Mr. Vitiello also gave an address at the Conference. *See id.* ¶ 9. Consequently, on May 16, 2019, ACLUM submitted an additional FOIA request to ICE (the "May Request"). *See id.* ¶ 11. The May Request sought information concerning the Vitiello address, specifically:

    a.  Records containing some or all of the Vitiello address, including without limitation any prepared remarks, notes, talking points, and outlines, and any drafts thereof.

    b.  Any slides, PowerPoint presentations, and handouts presented or provided in connection with the Vitiello address, and any drafts thereof.

    c.  Any audio and/or visual recordings of the Vitiello address.

    d.  Correspondence, including email correspondence, between or among ICE personnel (including Mr. Vitiello and his staff) and representatives of the National Sheriff's Association concerning the planning, delivery, and/or content of the Vitiello address.

    e.  Correspondence, including email correspondence, between or among ICE personnel (including Mr. Vitiello and his staff) and any employees or officers of the Commonwealth of Massachusetts (including any Massachusetts Sheriff and/or the employees of any Massachusetts Sheriff's Department) concerning the planning, delivery, and/or content of the Vitiello address.

ICE has never produced any documents in response to the May Request. *See id.* ¶ 14. On August 9, 2019, Plaintiff filed an Amended Complaint that added ICE's failure to respond to the

May Request as an additional basis for relief in this action. *See* Amended Complaint (Docket No. 16).

## IV.    Deficiencies in ICE's searches and production.

ICE's searches in response to the both requests were quite limited. *See id.* ¶¶ 10, 12-13, 17. In response to the February Request (regarding the Albence address), ICE never asked Mr. Albence what he said, or what materials he used, or whether he has any responsive records in his possession. *See id.* ¶ 10. And in response to the May Request (regarding the Vitiello address), ICE not only failed to contact Mr. Vitiello, but also made no search of his office at the time (*i.e.*, the office and staff of the Director). *See id.* ¶ 13. Indeed, it appears that ICE did not undertake any search at all in response to the May Request. *See id.* ¶ 12.

As of today, ICE has never produced to ACLUM any records containing any of the substance of Mr. Albence's or Mr. Vitiello's remarks to the Conference. *See id.* ¶ 16. Absent judicial intervention, it appears that ICE will simply never disclose what was said.

## ARGUMENT

ICE has the burden in this FOIA matter to demonstrate that it made an adequate search, and that it only withheld information falling within one of the FOIA's enumerated exemptions to disclosure. It cannot do so here.

## I.    ICE bears the burden at summary judgment.

Summary judgment is appropriate when the record as a whole demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the FOIA context, "summary judgment for an agency is only appropriate after the agency proves that it has fully discharged its FOIA obligations." *Abdul-Alim v. Wray*, 277 F. Supp. 3d 199, 205 (D. Mass. 2017) (quoting *Neuman v. United States*, 70 F.Supp.3d 416, 421–22 (D.D.C. 2014)).

With respect to redactions and material that is otherwise withheld, the district court reviews any application of an exemption *de novo*. 5 U.S.C. § 552(a)(4)(B); *see Moffat v. DOJ*, 716 F.3d 244, 250 (1st Cir. 2013). The exemptions "are to be construed narrowly, with all doubts resolved in favor of disclosure. *Moffat*, 716 F.3d at 250 (citing *Carpenter v. U.S. Dep't of Justice*, 470 F.3d 434, 438 (1st Cir.2006)). "[I]n keeping with FOIA's underlying presumption in favor of broad disclosure, the government agency bears the burden of proving the applicability of a specific statutory exemption." *Union Leader Corp. v. U.S. Dep't of Homeland Sec.*, 749 F.3d 45, 50 (1st Cir. 2014). "This burden does not shift even when," as here, "the requester files a cross-motion for summary judgment." *Prop. of the People, Inc. v. Office of Mgmt. & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (internal quotation marks omitted). That is because "the burden upon the requester is merely to establish the absence of material factual issues." *Id.* (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a).

With respect to the adequacy of an agency's search, summary judgment is appropriate if an agency fails to establish through reasonably detailed affidavits that its search was reasonably calculated to discover the requested documents. *See Maynard v. C.I.A.*, 986 F.2d 547, 559-560 (1st Cir. 1993). "[I]f an agency demonstrates that it has conducted a reasonably thorough search, the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." *Id.* at 560 (citation omitted).

**II.     ICE improperly asserted the deliberative process privileged to withhold the last-in-time version of the agency's remarks, which are neither pre-decisional nor deliberative.**

Under 5 U.S.C. § 552(b)(5) ("Exemption 5"), FOIA does not compel disclosure of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." This exemption encompasses the deliberative process privilege. *Providence Journal Co. v. United States Dep't of Army*, 981 F.2d 552, 557 (1st

Cir.1992). It is to be construed "narrowly as is 'consistent with efficient Government operations.'" *Id.* (quoting *EPA v. Mink*, 410 U.S. 73, 89 (1973)). Under the deliberative process privilege, "a document will qualify for protection under Exemption 5 if it is both 'predecisional' and 'deliberative.'" *Id.* (quoting *Dow Jones & Co. v. Dep't of Justice*, 908 F.2d 1006, 1008-09 (D.C. Cir. 1990). The documents at issue here are neither of those things.

### A.  The withheld remarks are not predecisional because they were created after the agency made its decisions about what to say.

A document is not predecisional unless "the agency can: (1) pinpoint the specific agency decision to which the document correlates, (2) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (3) verify that the document precedes, in temporal sequence, the decision to which it relates." *Id.*

Here, ICE is asserting the deliberative process privilege to withhold the last-in-time version of the remarks prepared by the OPA writer for any ICE speaker at the conference (including Mr. Vitiello and Mr. Albence). *See* Fuentes Decl. Ex. A (*Vaughn* Index) at 13; Ex. E at 105-110 (Feb. 6 version of remarks, redacted except for header). But the last-in-time version of those remarks, which was intended for immediate use as the basis for a speech, is not predecisional. ICE has not described any decision that this last-in-time version supposedly precedes, let alone established how these remarks were supposed to assist some official in making that decision. *Providence Journal Co.*, 981 F.2d at 557; *cf. Trea Senior Citizens League v. U.S. Dep't of State*, 923 F. Supp. 2d 55, 67 (D.D.C. 2013) (the agency has the burden of describing the nature of the decision-making vested in the office or person issuing the disputed documents).

To the contrary, ICE's own factual assertions prove that the last-in-time version is *post*-decisional. According to ICE, the OPA writer was assigned to be the official responsible for

deciding what the agency would say at the conference. *See* PSOF ¶ 4. The remarks are prepared for the event as a whole, not for any particular speaker. *See id.* The ICE official who ultimately speaks is not part of that decision-making process, and ICE has not presented any evidence that Mr. Albence or Mr. Vitiello actually did make further decisions after the OPA writer's last version of the remarks was prepared. Consequently, the relevant decision was made by the OPA writer, and the last version to leave his or her hands on February 6 is the result of, not a precursor to, that decision-making process.

ICE suggests that the deliberative process privilege allows it to withhold all versions of the remarks (labeled "talking points") because ICE has affixed to them the label "draft." Def.'s Mem. (Docket No. 22) at 10. However, calling something draft "is not a sufficient reason[] to automatically exempt it from disclosure." *New York Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 515 (S.D.N.Y. 2007) (citation omitted). Otherwise an agency could easily avoid disclosure by labeling everything a "draft" that simply inches closer to, but will never reach, its decisional destination. That is not the law. A document labeled "draft" simply does not fall within Exemption 5 unless it is both 'predecisional' and 'deliberative. *See Providence Journal*, 981 F.2d at 557.

ICE's reliance on "draft" terminology is especially unpersuasive in this case because there never was and never will be a subsequent iteration of the document at issue. ICE attempts to overcome this problem by arguing that the talking points "never became final" because "the speaker could use or not use" them, Fuentes Decl. ¶ 39, but it is not clear what ICE means by "final." The question for purposes of the deliberative process privilege is whether the document precedes or follows the relevant decision. Here, by ICE's own admission, the OPA writer was responsible for deciding what information would be conveyed at the conference. *See* PSOF ¶ 4.

The product of that process is post-decisional, even if the event had been ultimately cancelled or if one of the speakers actually delivered only a portion of the agency-approved remarks. To hold otherwise would utterly gut FOIA access to remarks by public officials—the written "talking points" would always be exempt from disclosure, and the oral remarks would not generally be affixed in any tangible medium that can be produced.

> **B.** **The withheld documents are not deliberative because they were not connected with any policy-making process.**

Even a predecisional document "may still not fall within the confines of [the deliberative process privilege] if it is not part of the deliberative process." *Providence Journal*, 981 F.2d at 559. "Deliberative material reflects the give-and-take of the consultative process and the manner in which an agency evaluates possible alternative policies or outcomes." *Am. Fed'n of Gov't Employees, AFL-CIO, Local 1164 v. U.S. Dep't of Health & Human Servs*., 63 F. Supp. 2d 104, 107 (D. Mass. 1999) (internal marks and citations omitted). For a predecisional document to be deliberative, it must (1) have formed an essential link in a specified consultation process, (2) reflect the personal opinions of the writer rather than the policy of the agency, and (3) if released, would inaccurately reflect or prematurely disclose the views of the agency. *Providence Journal*, 981 F.2d at 559. Here, none of the versions of ICE's remarks—variously dated February 4, 5, and 6—are deliberative, because ICE has not shown that they relate to any policy-making process. *See* Fuentes Decl. Ex. E at 39-44, 74-85, 90-95, 99-110 ("talking points" documents); Fuentes Decl. Ex. A (*Vaughn* index). To the contrary, there is no evidence that these "talking points" were anything more than a summary of existing agency policy.

To be sure, in 2015, in *New Hampshire Right to Life v. Department of Health and Human Services*, the First Circuit held that records concerning "how and what to communicate to the public" regarding the announcement of a federal grant award were protected by the deliberative

process privilege. 778 F.3d 43, 47, 54 (1st Cir. 2015). Consequently, it is clear that "'messaging communication *can* be protected" by the privilege. *See New York v. Dep't of Commerce*, 18-2921, 2018 WL 2853891, at *2 (S.D.N.Y. Oct. 5, 2018) (collecting and analyzing authorities). But "where 'messaging' communications amount to little more than deliberations over how to spin a prior decision, or merely reflect an effort to ensure that an agency's statement is consistent with its prior decision," such communications won't be exempt from disclosure. *Id.* Accordingly:

> "[T]he key inquiry[]" . . . is whether the disputed materials "reflect deliberations about what 'message' should be delivered to the public about an *already-decided* policy decision, or whether the communications are of a nature that they would reveal the deliberative process underlying a *not-yet-finalized* policy decision," including the very decision about what "message" to deliver — provided that the particular "messaging" decision is among those that Congress has asked the agency to make.

*Id.*

Under this framework, at least one court has specifically rejected the withholding of draft talking points that related to the communication of existing policy. *See Natural Resources Defense Council v. EPA*, 17-5928, 2019 WL 4142725, at *8-9 (S.D.N.Y. Aug. 30, 2019). The situation here is no different—ICE has not asserted that the remarks to the conference were anything more than an explanation of existing policies and decisions. Without such a showing, the privilege should not apply to any version of the remarks. *See id.*; *cf. Right to Life*, 778 F.3d. at 54.

Indeed, ICE cited no case law in which a court has shielded communication memoranda characterizing policies that have already been publicly announced. In fact, case law supports the opposite conclusion. *Cf. N. L. R. B. v. Sears, Roebuck & Co*., 421 U.S. 132, 153 (1975) ("Exemption 5, properly construed, calls for disclosure of all 'opinions and interpretations' which embody the agency's effective law and policy, and the withholding of all papers which reflect the

agency's group thinking in the process of working out its policy and determining what its law shall be."). "Because the deliberative process privilege is restricted to the intra-governmental exchange of thoughts that actively contribute to the agency's decision-making process, factual statements or post-decisional documents explaining or justifying a decision already made are not shielded." *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884–85 (1st Cir. 1995); *see also Competitive Enter. Inst. v. United States Dep't of Treasury*, 308 F. Supp. 3d 109, 117 (D.D.C. 2018); *ACLU v. Dep't of Educ.*, 320 F. Supp. 3d 270, 280 (D. Mass. 2018); *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 876 (D.C. Cir. 2010).

Further, whether or not the privilege applies to the February 4 and 5 versions of the remarks, ICE has failed to demonstrate that the last-in-time version of the talking points (dated February 6) is deliberative. The public policy animating Exemption 5 (*i.e.* not prematurely disclosing the views of the agency or confusing the public about the agency's policies) is not implicated here. *See Providence Journal*, 981 F.2d at 557 (discussing deliberative process privilege's purpose which should guide its application).[1] Application of Exemption 5 is specific to the facts of the case. *Am. Ctr. for Law & Justice v. United States Dep't of Justice*, 392 F. Supp. 3d 100, 106 (D.D.C. 2019) ("[P]rotection [under Exemption 5] is not categorical. The key, as with any privilege, is context."). And in this matter, if released, the talking points would not inaccurately reflect the views of the agency because ICE continues to assert that it has no record of the speech given by either Mr. Albence or Mr. Vitiello.  Fuentes Decl. ¶ 35. Thus, there is no

---

[1] "The intended beneficiaries of Exemption 5 include: (1) agency subordinates, who can provide their superiors with candid opinions without fear that those opinions will later be subjected to public ridicule or criticism; (2) the agencies themselves, which are protected against premature disclosure of proposed policies; and (3) the public, which can be confused and misled by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for that action." *AFL-CIO*, 63 F.Supp.2d at 107 (D. Mass. 1999) (citing *Providence Journal*, 981 F.2d at 557).

risk that the public can compare their speeches with the final talking points and be confused about what the final position of the agency is or discern from the talking points the agency's deliberative process.

Additionally, as noted, ICE has not met its burden to show that the talking points are anything more than a recitation and explanation of existing agency policy; there should be no concern about prematurely disclosing the views of the agency. Nothing in the record supports an assertion that the talking points reflect the personal opinions of the writer or speaker rather than the policy of the agency. ICE's conclusory statements that the draft documents comprise "recommendations, opinions of individuals or advisory opinions of agency personnel," Def.'s Memo. (Docket No. 22) at 9, cannot act to shield the last version of the talking points from public disclosure.

### III.   Even if all versions of the agency's remarks are covered by the deliberative process privilege, segregable factual information contained in those documents and accompanying emails must be disclosed.

Even if the Court holds that Exemption 5 does apply to shield the talking points from disclosure, the factually-segregable information contained within the talking points and emails must be disclosed.[2] "[S]egregable factual portions of the document might still be subject to compelled disclosure if, for example, they are not so 'inextricably intertwined' with the deliberative material that their disclosure would compromise the private remainder of the documents." *Providence Journal*, 981 F.2d at 559. "[I]f a person requests particular factual material, . . . an agency cannot withhold the material merely by stating that it is in a draft document. In such a case, the agency will usually be able to excise the material from the draft

---

[2] This argument pertains to all of the "talking points" documents referenced above, as well as the email records redacted pursuant to Exemption (b)(5) at Fuentes Ex. E, pages 1, 11-15, 19, 22, 26, 29, 32, 96-98, and 111-26.

document . . . and thus the agency will usually be able to release the material without disclosing any deliberative process." *AFL-CIO*, 63 F. Supp. 2d at 109 (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987)).

Here, it appears highly probable that the talking points and emails contain factual information to which the exemption does not apply. It is unfathomable that an agency official could give an address concerning the agency's operations without including *some* factual information about what the agency has been doing, yet ICE has not released *any* such information from *any* versions of the "talking points" documents or the accompanying emails. In such circumstances, the Court should exercise its broad discretion to conduct an *in camera* review of the documents to determine whether these documents, even if privileged, nevertheless contain segregable factual information that must be released. 5 U.S.C. § 552(a)(4)(B); *Abdul-Alim*, 277 F.Supp.3d at 211. Where, as here, "the documents are few in number, *in camera* review is 'particularly appropriate.'" *Id.* (quoting *Maynard*, 986 F.2d at 557).

**IV.     ICE did not conduct an adequate search in response to ACLUM's requests.**

As this Court has explained, an agency's search cannot be deemed adequate unless the agency "demonstrate[s] beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Stalcup v. Dep't of Defense*, No. 13-11967, 2018 WL 4963169, at *2 (D. Mass. Oct. 15, 2018) (Sorokin, J.). "The burden is on the agency to justify its response to plaintiff's FOIA request." *Id.* "The crucial issue is not whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents." *Id.* Here, ICE has not met its burden for at least two reasons.

First, ICE's search was not adequate because it never made *any* search in response to the May Request, which sought remarks by an additional ICE official. *See* PSOF ¶ 12. The earlier

14

February Request had sought information about the address given by Mr. Albence, who was the Acting Deputy Director at the relevant time. *See* PSOF ¶ 2. ICE conducted a search of the Office of the Deputy Director, which was concluded in March 2019. *See* Fuentes Decl. ¶¶23-25. The May Request subsequently sought information about the address by Mr. Vitiello, who was the Acting Director at the relevant time. *See* PSOF ¶¶ 3, 11. ICE never made a search of Mr. Albence's office for responsive records, however. *See id.* ¶ 12. In fact, ICE did not conduct any search at all in response to the May Request. That is not reasonable. *See Stalcup*, 2018 WL 4963169, at *5-6 (search not shown reasonable where agency failed to explain search of one directorate but not others) (citing *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)).

Second, ICE's search was not adequate because it never contacted either speaker. The two requests sought a variety of documents that would tend to be in the speaker's exclusive possession, including the actual prepared remarks, notes, outlines, handouts, and slides (if any) that were used during the presentation. *See* PSOF ¶¶ 6, 11  Here, however, nobody at ICE ever asked Mr. Albence or Mr. Vitiello what they said, what documents they relied upon or distributed, or whether they have retained any records in their possession. *Id.* ¶¶ 10, 13. This failure is particularly egregious where ICE's position seems to be that it would only produce materials actually presented by the individual speakers, and not the remarks prepared by the OPA writer or other staff in advance of the conference. *See* Def.'s Mem. (Docket No. 22) at 10. ACLUM disagrees with that position. But in all events, ICE cannot complete a reasonable search without contacting the most likely sources of the only records that ICE actually believes might be eligible for release. *See Stalcup*, 2018 WL 4963169, at *6.

**V.     The National Sheriffs' Association agendas appear to be documents prepared outside the agency and must be produced.**

Lastly, ICE improperly invokes the deliberative process privilege to withhold a document received from a third party, specifically a conference agenda prepared by the National Sheriffs' Association. *See* Fuentes Exs. A at 2, 9 & E at 38, 89. By its very terms, Exemption 5 shields only inter- or intra-*agency*[3] documents. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (to qualify for protection under Exemption 5, "a document['s] source must be a Government agency"). ICE consequently cannot use this exemption to withhold agendas provided to it by a third party. Def.'s Memo. at 10. That record should be released.

<u>**CONCLUSION**</u>

For all the foregoing reasons, ACLUM respectfully requests that the Court grant its cross-motion for summary judgment, and the deny ICE's motion for summary judgment.

Dated: October 23, 2019                    Respectfully submitted,

                                           */s/ Jessica J. Lewis*
                                           Matthew R. Segal (BBO #654489)
                                           Daniel L. McFadden (BBO #676612)
                                           Jessica J. Lewis (BBO #704229)
                                           American Civil Liberties Union
                                            Foundation of Massachusetts, Inc.
                                           211 Congress Street
                                           Boston, MA 02110
                                           (617) 482-3170
                                           msegal@aclum.org
                                           dmcfadden@aclum.org
                                           jlewis@aclum.org

---

[3] "For the purposes of [FOIA], the term 'agency' . . . includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f).

## **LOCAL RULE 7.1 STATEMENT**

I hereby certify that ICE has previously filed a motion for summary judgment opposing the relief requested herein.

*/s/ Jessica J. Lewis*
Jessica J. Lewis

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served today on all parties via the Court's CM/ECF system.

*/s/ Jessica J. Lewis*
Jessica J. Lewis